IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:12CV14-GCM-DSC

| | |
|---|---|
| ELLEN MCGRADY,            ) | |
|     Plaintiff,        ) | |
|                           ) | |
| vs.                       ) | **MEMORANDUM AND RECOMMENDATION** |
|                           ) | |
| MICHAEL J. ASTRUE,        ) | |
| Commissioner of Social    ) | |
| Security Administration,  ) | |
|     Defendant.       ) | |
|                           ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #7) and "Memorandum in Support ..." (document #8), both filed April 9, 2012; and Defendant's "Motion for Summary Judgment" (document #9) and "Memorandum in Support ... (document #9-1), both filed June 6, 2012.   This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On March 14, 2007, Plaintiff filed an application for a period of disability and Social

---

[1]Pursuant to the Pretrial Scheduling Order entered on February 7, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Document #5. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

Security benefits alleging she was unable to work as of April 1, 2002 due to fibromyalgia, arthritis, osteoporosis, degenerative disc disease, skin disease, myofacial pain and diabetes. (Tr. 153). Plaintiff's application was denied initially and on reconsideration. Plaintiff subsequently requested a hearing which was held on July 30, 2009. (Tr. 30-62).

On March 25, 2010, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 13-20). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 2002 through her date last insured of March 31, 2006.[2] (Tr. 15). The ALJ also found that Plaintiff suffered from arthritis, diabetes, and anxiety, which were severe impairments within the meaning of the regulations but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16). The ALJ then considered whether Plaintiff could return to her past relevant work. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the full range of semi-skilled or unskilled medium work[3] (Tr. 21). Based on this RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a daycare worker through March 31, 2006 and accordingly was not disabled. (Tr. 20).

By notice dated November 18, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on January 11, 2011. On appeal, Plaintiff assigns error to

---

[2] A claimant must prove disability prior to her date last insured. Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005). See 20 C.F.R. § 404.131.

[3] "Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

2

the ALJ's evaluation of the severity of her impairments, determination of her RFC, analysis of her credibility, and conclusion that she could perform her past relevant work. See Plaintiff's "Memorandum in Support ..." 4-18 (document #8). Plaintiff also assigns error to the Appeals Council's decision not to remand for consideration of new medical evidence. Id. at 18-19. The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

3

evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior to her date last insured of March 31, 2006.[4] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

Plaintiff first argues that the ALJ should have found fibromyalgia and osteoporosis to be additional severe impairments. Since the ALJ found that Plaintiff had at least one severe impairment, there was no reversible error at step two. At step two, the ALJ must determine whether

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable
  physical or mental impairment which can be expected to result in death or which has lasted or can
  be expected to last for a continuous period of not less than 12 months . . . .
      Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

the claimant has at least one severe impairment. Then the analysis proceeds to step three of the evaluation process. See 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step . . . [i]f you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled.") (emphasis added). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment ... and that finding is all that step two requires"). See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error [at step two] became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Here, the ALJ found severe impairments at step two, and proceeded to the remaining steps of the sequential evaluation process. Thus, there was no reversible error at step two.

Moreover, the ALJ properly found that Plaintiff's severe impairments during the period before March 31, 2006 were arthritis, diabetes, and anxiety. Plaintiff failed to carry her burden of proving that she had any additional severe impairments during the insured period. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step [of the sequential evaluation process], the burden of production and proof is on the claimant.") Plaintiff concedes that she was not diagnosed with fibromyalgia until two months after her insured status expired. See Johnson, 434 F.3d at 655-56 (claimant must prove disability before expiration of insured status); Plummer v.

Astrue, 5:11CV006–RLV–DSC, 2011 WL 7938431, at *3 (W.D.N.C. Sept. 26, 2011) (evidence dated several months after insurance expiration was "not probative of [claimant's] condition during the relevant time period"), aff'd, 2012 WL 1858844 (W.D.N.C. May 22, 2012); Sides v. Astrue, No. 3:10CV522–RJC–DSC, 2011 WL 5037221, at *3 (W.D.N.C. July 12, 2011) (evidence dated after insurance expiration was "largely irrelevant"), aff'd, 2011 WL 5041185 (W.D.N.C. Oct. 24, 2011).

Plaintiff next challenges the ALJ's formulation of her RFC. The ALJ properly evaluated the physical aspect of Plaintiff's RFC, finding that she was limited to medium work. Substantial evidence supports the ALJ's finding on this point. The ALJ gave significant weight (Tr. 19) to the opinion of state agency medical consultant Dr. Whitmer, who considered all of Plaintiff's alleged impairments, including fibromyalgia and osteoporosis (Tr. 260). See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.") Dr. Whitmer opined that Plaintiff could still perform the exertional requirements of medium work - occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, and stand, sit, or walk for about six hours per workday (Tr. 254). See 20 C.F.R. § 404.1567(c).

Plaintiff mistakenly claims that the ALJ "did not assess any exertional limitations" "Memorandum in Support ..." at 9 (document #8). The ALJ limited Plaintiff's RFC to medium work, as opposed to heavy work or very heavy work. See 20 C.F.R. § 404.1567.

Plaintiff argues that the ALJ did not factor her arthritis into the RFC assessment. To the contrary, the ALJ considered her arthritis by limiting Plaintiff to medium work, involving a limited amount of lifting and carrying, as opposed to heavy work or very heavy work. See 20 C.F.R. § 404.1567. To the extent Plaintiff now argues that her arthritis limited the use of her hands and

fingers, she cites no medical opinion to support such a claim. The only evidence from the insured period that Plaintiff cites on this point is an August 20, 2004 note from Dr. Benson (Tr. 197). In that note, however, Dr. Benson described Plaintiff's hand pain as "mild" and indicated that no prescription was necessary (Tr. 197). Only Dr. Whitmer has offered an opinion on Plaintiff's abilities in handling, reaching, and fingering. He found no such limitations (Tr. 256), despite being aware of Plaintiff's arthritis (Tr. 260). The ALJ gave significant weight to Dr. Whitmer's opinion and accounted for Plaintiff's arthritis by limiting her to medium work.

The ALJ also properly evaluated the mental aspect of Plaintiff's RFC, limiting her to semi-skilled or unskilled work. As the ALJ properly observed, and Plaintiff does not dispute, "[t]here is no evidence that the claimant was evaluated or treated by mental health professionals prior to her date last insured." (Tr. 18). This observation is consistent with the opinion of Dr. Salley S. Jessee who reviewed the evidence and stated that there was "insufficient medical evidence prior to [the date last insured]" even to form an opinion on Plaintiff's mental functioning. (Tr. 261, 273.) Despite this lack of evidence, the ALJ gave Plaintiff the benefit of the doubt and "evaluated the evidence in the light most favorable to the claimant" and found that she "had some limitation in concentration" but "could still sustain the concentration required for semi-skilled and unskilled work." (Tr. 18).

Plaintiff argues that the ALJ erred because the mental RFC did not specifically mention the limitations that he found including mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence, and pace. (Tr. 16.) This argument fails, especially considering that the ALJ found that Plaintiff had only mild or moderate limitations, yet gave her the benefit of the doubt by "evaluat[ing] the evidence in the light most favorable to the claimant" and limiting her to less than skilled work. (Tr. 18.) See Grubby v. Astrue, No. 1:09cv364, 2010 WL 5553677, at *13 (W.D.N.C. Nov. 18, 2010) ("the findings an ALJ makes as

7

to the claimant's (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, and pace need not be included in the ALJ's RFC assessment"), aff'd, 2011 WL 52865 (W.D.N.C. Jan. 7, 2011); Collins v. Astrue, No. 1:10cv189, 2011 WL 6440299, at *7 (W.D.N.C. Dec. 21, 2011) (quoting Grubby); Patton v. Astrue, No. 1:10cv211, 2011 WL 6300361, at *6 (W.D.N.C. Dec. 16, 2011) (quoting Grubby).

Plaintiff asserts that the ALJ was required to discuss whether she could "complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," but cites no authority for that assignment of error. Document #8 at 12. This Court has previously rejected similar arguments. See Grubby, 2010 WL 5553677, at *15 (rejecting argument that ALJ failed to consider whether claimant could "sustain her RFC for 8 hours per day, 5 days per week").

Plaintiff next argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint

8

motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's arthritis, diabetes, and anxiety– which <u>could</u> be expected to produce some of the pain she claims. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, <u>and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence</u> and other evidence.") (emphasis added).

As the ALJ explained, Plaintiff's complaints were inconsistent with her activities during the insured period, such as walking and exercising, and with the opinion evidence from the state agency medical consultants. "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

Plaintiff claims that the ALJ "ignored that [Plaintiff] hoped she was going to get better and kept putting off medical care." Document #8 at 16. This argument is belied by the ALJ's acknowledgment that "[Plaintiff] stated that there were not many doctors' records prior to March 2006 because they thought she was going to get better." (Tr. 19). A symptom that can be reasonably controlled by medication or treatment is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965)).

Similarly, Plaintiff misconstrues the ALJ's decision by arguing that the ALJ "discredited Mrs. McGrady because she testified that her symptoms had gotten worse over the past two years

(2007-2009) though she alleged an onset date of April 2002." Document #8 at 16. Plaintiff appears to refer to this portion of the ALJ's decision:

> Although the claimant alleged a disability onset date of April 2002, she testified that her symptoms had progressively worsened over the past 2 years. Further, although the claimant testified that she could perform very few activities as of the hearing date, the record shows that prior to her date last insured she was walking and exercising. This evidence diminishes the claimant's credibility regarding her functional limitations prior to the date last insured.

(Tr. 19.) The ALJ was simply acknowledging that while Plaintiff's condition might have been disabling at the time of the hearing in 2009, it was not necessarily disabling during the insured period prior to March 31, 2006. The ALJ also stated, "I note that the claimant is receiving SS benefits and is likely disabled after her date last insured. However, I conclude that the evidence does not support a finding of disability prior to the date last insured." (Tr. 17.)

Finally, Plaintiff argues that remand is required so the ALJ can evaluate the evidence that she submitted to the Appeals Council. Document #8 at 18-19. Plaintiff's argument is based on Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). However, Meyer is distinguishable because in that case, the claimant submitted a new opinion from a treating source for the first time to the Appeals Council. The Fourth Circuit has taken note of "the weight afforded the opinion of a treating physician" and held that remand was necessary because "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Meyer, 662 F.3d at 707. In this case, the new evidence Plaintiff submitted to the Appeals Council did not include an opinion from a treating physician. Thus, Meyer does not require remand in this case.

Plaintiff cites two matters in evidence that purportedly undermine the ALJ's decision. Both are related to Plaintiff's alleged chronic fatigue syndrome. A June 14, 2001 medical note regarding

10

Plaintiff's cholesterol makes no mention of Plaintiff's pain or any other limitations but refers to "possible" chronic fatigue syndrome. (Tr. 327). An October 10, 2003 medical note from Plaintiff's gynecologist reflects a normal gynecological examination, indicates no complaints of pain, and mentions that Plaintiff reported that she was "being evaluated for chronic fatigue syndrome" without further explanation. (Tr. 333.) These notes are not sufficient to undermine the Appeals Council's decision that remand was not proper.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record, the hearing testimony, and Plaintiff's RFC and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #7) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #9) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: June 11, 2012

David S. Cayer
United States Magistrate Judge